**MEMO ENDORSED**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6-11-07

# WACHTELL, LIPTON, ROSEN & KATZ

51 WEST 52ND STREET

NEW YORK, N.Y. 10019-6150

TELEPHONE: (212) 403-1000
FACSIMILE: (212) 403-2000

GEORGE A. KATZ (1965-1989)
JAMES H. FOGELSON (1967-1991)

OF COUNSEL

COUNSEL

DIRECT DIAL: (212) 403-1257
DIRECT FAX: (212) 403-2257
E-MAIL: EMROTH@WLRK.COM



June 8, 2007

BY HAND DELIVERY

The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
Room 2260
New York, New York 10007-1312

Re: **Bank of America Corp. v. ABN AMRO Bank N.V., et al., 07 Civ. 3578 (PKC)**

Dear Judge Castel:

This joint letter is respectfully submitted by the parties in accordance with the Court's Order Scheduling Initial Pretrial Conference dated May 7, 2007. The initial pretrial conference is scheduled for June 15, 2007, at 9:30 a.m. In addition, for the reasons set out below, the parties jointly request that the initial pretrial conference be postponed until sometime during the week of July 23, 2007 given the schedule for proceedings in related litigation in the Netherlands.

WACHTELL, LIPTON, ROSEN & KATZ

The Honorable P. Kevin Castel
June 8, 2007
Page 2

1.  **Brief description of the case**

        This action arises out of the Purchase and Sale Agreement dated April 22, 2007 (the "PSA"), pursuant to which plaintiff Bank of America Corporation ("Bank of America") agreed to purchase from defendant ABN AMRO Bank N.V. ("ABN Bank") the ABN Bank subsidiary ("ABN North America") that owns all of the shares of LaSalle Bank Corporation ("LaSalle"), for $21 billion in cash (subject to adjustments, based on certain factors specified in the PSA). ABN Bank, which is incorporated under the laws of the Netherlands, is itself a subsidiary of defendant ABN AMRO Holding N.V. ("ABN Holding"), a public company that is also incorporated under the laws of the Netherlands. ABN Holding and ABN Bank are jointly referred to herein as ABN.

        Bank of America alleges in its complaint that in the PSA, ABN Bank expressly represented and warranted to Bank of America that each of the following matters was "true and correct":

        (a)    ABN Bank "has full corporate power and authority to execute and deliver [the PSA] and to consummate the transactions contemplated hereby";

        (b)    "No other corporate proceedings (including any approvals of [ABN Bank's] stockholders) on the part of [ABN Bank] are necessary to approve [the PSA] and to consummate the transactions contemplated hereby";

        (c)    The PSA "has been duly and validly executed and delivered by [ABN Bank]" and "constitutes a valid and binding obligation of [ABN Bank], enforceable against [ABN Bank] in accordance with its terms"; and

        (d)    "Neither the execution and delivery of [the PSA] by [ABN Bank] nor the consummation by [ABN Bank] of the transactions contemplated hereby, nor compliance by [ABN Bank] with any of the terms or provisions hereof, will . . . violate any statute, code, ordinance, rule, regulation, judgment, order, writ, decree or injunction applicable to [ABN Bank], [ABN North America] or any of their respective subsidiaries or any of their respective properties or assets."

Bank of America alleges that these representations and warranties — which it also alleges confirmed oral assurances given by defendants' representatives to Bank of America during the course of negotiations that ABN Bank in fact had the authority to enter into the PSA and to sell ABN North America to Bank of America without the need for any further corporate proceedings under Dutch law — were essential terms of the contract in view of Bank of America's desire for speed and certainty of consummation.

The Honorable P. Kevin Castel
June 8, 2007
Page 3

Bank of America also alleges that the PSA contains a "go shop" provision that gave ABN Bank 14 days (i.e., until May 6, 2007) to solicit, negotiate and conditionally accept a "Superior Proposal" for LaSalle from any third party. According to Bank of America, the PSA provides, in substance, that a "Superior Proposal" must be an all-cash offer to buy LaSalle itself (as distinct from ABN Holding as a whole) without any conditions relating to financing of the purchase price and on terms that are superior from a financial point of view to the Bank of America deal, subject to Bank of America's right to match any third party's "Superior Proposal" within five business days. Bank of America further alleges that the PSA provides that once the 14-day "go shop" period has ended without ABN Bank's entry into an "Alternative Acquisition Agreement" with respect to a "Superior Proposal", ABN Bank cannot solicit, or even consider, alternative proposals to buy LaSalle. The "go-shop" period expired without ABN Holding receiving a "Superior Proposal" or entering into any such "Alternative Acquisition Agreement."

On April 23, 2007, the same day that ABN Holding announced the LaSalle transaction with Bank of America, ABN Holding also announced an agreement to merge with Barclays PLC, a U.K. bank, in a stock-for-stock transaction that valued ABN AMRO at approximately $88 billion. The Barclays transaction is conditioned upon the sale of LaSalle. Bank of America's acquisition of LaSalle is not conditioned upon the Barclays transaction or any other transaction.

On April 25, 2007, a consortium of European banks (the "Consortium") publicly proposed the possibility of acquiring ABN Holding for stock and cash. One of the members of the Consortium, Royal Bank of Scotland Group plc ("RBS"), has publicly expressed its interest in acquiring LaSalle. Accordingly, the Consortium made its potential bid for ABN Holding contingent on LaSalle remaining within ABN Holding (and not being sold to Bank of America).[1]

On April 26, 2007, a Dutch shareholder advocacy group (the "VEB") commenced proceedings against ABN Holding and ABN Bank in the Enterprise Chamber of the Amsterdam Court of Appeal (the "Enterprise Chamber"), seeking, among other things, a provisional ruling that the sale of LaSalle required the approval of ABN Holding's shareholders under Dutch law. On April 28, the Enterprise Chamber held a hearing on the VEB's application for immediate relief and, on May 3, the Enterprise Chamber issued a provisional order forbidding the

---

[1] On May 5, 2007, ABN Holding received a proposal from the Consortium to purchase LaSalle, which was conditioned upon the purchase by the Consortium of ABN Holding as a whole. The Managing Board and the Supervisory Board of ABN Holding did not conclude that the Consortium's bid for LaSalle was a "Superior Proposal" under the PSA, and the 14-day "go-shop" period thus expired without ABN Bank's acceptance of a "Superior Proposal."

WACHTELL, LIPTON, ROSEN & KATZ

The Honorable P. Kevin Castel
June 8, 2007
Page 4

implementation and consummation of the PSA pending approval of the transaction by ABN Holding's shareholders.

ABN Holding and ABN Bank have appealed from the order of the Enterprise Chamber to the Netherlands Supreme Court — as have Bank of America and Barclays, both of which were permitted to participate in the proceedings before the Enterprise Chamber as "interested parties." Each of these parties has requested that the Netherlands Supreme Court nullify the May 3 order of the Enterprise Chamber. The VEB and the Consortium are expected to oppose these requests in briefs that are due on June 11. The Netherlands Supreme Court has recently agreed to give expedited treatment to these appeals and has advised all parties that it intends to render its decision on the appeals before the Court's summer recess begins (i.e., in early to mid-July 2007).

Bank of America filed its complaint in this Court on May 4, 2007. The PSA provides that it is to be interpreted, construed and governed by New York law without regard to conflict of laws principles.

Bank of America's complaint sets forth four causes of action:

(a) Specific Performance. Bank of America seeks specific performance of ABN Bank's obligation to sell LaSalle. The PSA recites the parties' agreement that irreparable damage would occur in the event that any party failed to consummate the proposed transaction in accordance with the terms of the PSA and that the parties "shall be entitled to specific performance in such event."

(b) Injunctive Relief. Bank of America also seeks an injunction preventing defendants from negotiating for the sale of LaSalle with, or selling LaSalle to, any third party other than as provided for in the PSA.

(c) Damage claim for breach of contract. Alternatively, Bank of America seeks damages resulting from ABN Bank's alleged breach of representations and warranties relating to its authority to sell LaSalle and its ability to do so without any further corporate proceedings.

(d) Damage claim for quantum meruit. Bank of America also seeks damages from both ABN Bank and ABN Holding on a theory of quantum meruit: if, as a result of their representations and warranties and the $21 billion purchase price they thereby succeeded in extracting from Bank of America, defendants are ultimately able to obtain an acquisition price for ABN Holding that exceeds the price they otherwise would have obtained,

WACHTELL, LIPTON, ROSEN & KATZ

The Honorable P. Kevin Castel
June 8, 2007
Page 5

        defendants will have been unjustly enriched at the expense of Bank of America.

        All parties have agreed that the date for ABN to answer or move with respect to the Complaint is June 29, 2007 and a stipulation establishing that response date has been submitted to the Court and so ordered. It is the position of ABN that the filing of this action by Bank of America was premature. First, it is ABN's position that if the decision of the Enterprise Chamber is reversed, as Bank of America has advocated in its appeal to the Netherlands Supreme Court, there is no breach of the PSA and no basis for this action whatsoever. Similarly, it is ABN's position that even if the decision of the Enterprise Chamber is not reversed and a shareholder vote proves necessary, that vote could approve the contracted sale of LaSalle to Bank of America and there would be no damages to Bank of America in connection with what would then be at most a technical breach of the PSA. Finally, it is ABN's position that even if a party other than Barclays PLC acquires ABN Holding, that party may choose to honor the terms of the PSA and complete the sale of LaSalle to Bank of America. Given these various scenarios, there is, in the view of ABN, no purpose served by the prosecution of this action at the present time. In Bank of America's view, the action is not premature and it could suffer damages attributable to what ABN characterizes as "at most a technical breach" of the PSA even if the sale of LaSalle to Bank of America were ultimately consummated.

## 2. **Contemplated Motions**

        In Bank of America's view, the necessity for motion practice largely turns upon the outcome of the pending appeals to the Netherlands Supreme Court. In the event that the Supreme Court promptly reverses the Enterprise Chamber and rules that shareholder approval of the PSA by ABN Holding's shareholders is not required under Dutch law, and Bank of America and ABN Bank are able to proceed to closing under the PSA in a timely fashion, there probably will be no need for motion practice in this Court. Should the Supreme Court affirm the Enterprise Chamber, however, there are a number of motions that Bank of America might file depending upon the grounds for the Supreme Court's ruling and any actions taken by defendants (and/or any third parties) in response thereto. Such motions could include: (a) a motion for a preliminary injunction prohibiting defendants' sale of LaSalle to a third party; (b) a motion for partial summary judgment on Bank of America's claim for specific performance; and/or (c) a motion for expedited proceedings.

        In this connection, it is Bank of America's position that, even if the Netherlands Supreme Court were to affirm the Enterprise Chamber's ruling that the sale of ABN North America (which holds the shares of LaSalle) required the approval of ABN Holding's shareholders under Dutch law, Bank of America's rights to obtain injunctive relief, including specific performance, would remain unimpaired under New York law because: (1) Bank of America was a bona fide purchaser without notice of any fraud or misuse of power by defendants' directors in authorizing the sale of ABN North America; (2) under the PSA the

The Honorable P. Kevin Castel
June 8, 2007
Page 6

parties expressly agreed that New York law governs the interpretation and enforcement of the PSA and that this Court is the appropriate forum to determine any disputes arising under the PSA;[2] and (3) under principles of contract and comity, this Court should not give extraterritorial effect to the Dutch court proceedings, especially inasmuch as the pertinent provisions of Dutch law apply (if at all) only to the rights of the shareholders of ABN Holding vis-à-vis the directors of that company, and not to the rights of Bank of America to enforce the PSA. See Cross Properties, Inc. v. Brook Realty Co., 37 A.D.2d 193, 201-03, 322 N.Y.S.2d 773, 781-83 (2d Dep't 1971), aff'd on the opinion below, 31 N.Y.2d 938 (1972) (holding that specific performance is a remedy available to bona fide purchaser, based in U.S., of seller's assets located in U.S., notwithstanding failure by seller's parent company to comply with shareholder vote requirement purportedly imposed by British law).

ABN does not disagree that the need for motion practice will depend in large part on the resolution of the appeals to the Netherlands Supreme Court and other developments. At present ABN believes it is premature to identify potential motions that it may make.

3.   **The Prospect for Settlement**

Given the pendency of the Dutch appeals, it is premature to comment on the prospect for settlement.

4.   **Related Matters in this Court**

On April 27, 2007, Halpert Enterprises commenced in Supreme Court, New York County, a purported class action against ABN Holding, the members of the Managing and Supervisory Boards of ABN Holding and Bank of America. Halpert Enterprises v. ABN AMRO Holding N.V., et al., Index No. 07601397. Plaintiff alleges that the members of the ABN Boards breached their fiduciary duties by causing ABN Bank to enter into the PSA and that the termination fee clause in the PSA is unlawful as it was designed by ABN, its Board members and Bank of America to discourage other bidders for LaSalle. To date, Plaintiff in that action has

---

[2] See The Bremen v. Zapata Off-Shore Corp., 407 U.S. 1, 12-13 (1972) (choice of forum clause in a "freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here, should be given full effect"); Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1362 (2d Cir. 1993) (noting the "presumptive validity of forum selection and choice of law clauses where the underlying transaction is fundamentally international in character" because such clauses "eliminate uncertainty in international commerce and insure that the parties are not unexpectedly subjected to hostile forums and laws").

WACHTELL, LIPTON, ROSEN & KATZ

The Honorable P. Kevin Castel
June 8, 2007
Page 7

served only Bank of America, and Bank of America has today filed a Notice of Removal to this Court (to which the ABN defendants have consented). We anticipate that the Halpert action will ultimately be assigned to Your Honor as a related case.

Finally, on May 15, 2007, an action was commenced in this Court captioned Carl and Toni Sadowsky v. Bank of America Corporation, Civil Action No. 07 Civ. 3800. Plaintiffs in that action purport to be ABN Holding shareowners suing in the capacity of third party beneficiaries of the PSA. They assert various claims against Bank of America and, in particular, seek to enjoin the prosecution by Bank of America of its claims against ABN. The Sadowsky case has also been assigned to Your Honor.

5. **Request for Continuance of the Initial Conference**

Given the pending appeals to the Netherlands Supreme Court and the importance of those appeals to the claims asserted and defenses likely to be asserted in this action, the parties have conferred and agreed that that the initial conference now scheduled for June 15, 2007 at 9:30 a.m. should be continued to a date after the Netherlands Supreme Court is likely to have ruled. As noted above, the parties believe that ruling will be issued sometime in early to mid-July and thus the parties request that the conference be scheduled sometime during the week of July 23, 2007.

Respectfully yours,

Eric M. Roth
WACHTELL, LIPTON,
ROSEN & KATZ

Counsel for Plaintiff Bank
of America

Lawrence Portnoy
DAVIS POLK & WARDWELL

Counsel for Defendants ABN
AMRO Bank N.V. and ABN
AMRO Holding N.V.

*[Handwritten note from judge:]* Based upon the joint application of the parties, and given the pendency of proceedings in The Netherlands, I will adjourn the June 15 conference to July 27, 2007 at 2:15pm. The parties are directed to advise this Court upon receipt of rulings from The Netherlands Court. SO ORDERED.

/s/ PKC
6-11-07